IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN PATRICK BIAFORA,

                Plaintiff,

v.                                                      OPINION and ORDER

MARTIN O'MALLEY,[1]                             22-cv-469-jdp
Commissioner of Social Security,

                Defendant.

---

      Plaintiff John Patrick Biafora seeks judicial review of a final decision of defendant Martin O'Malley, Commissioner of the Social Security Administration, finding that Biafora was not disabled within the meaning of the Social Security Act. Biafora contends that the ALJ erred in three ways: by not accounting for Biafora's moderate mental limitations when she determined his residual functional capacity (RFC); by improperly evaluating an opinion from an examining consulting psychologist; and by failing to resolve a purported conflict between the vocational expert's testimony and the Dictionary of Occupational Titles about the jobs that Biafora could do despite his limitations. The court concludes that the ALJ adequately explained her reasoning for the restrictions she included in the RFC and for why she weighed the medical opinions as she did. And the ALJ did not fail to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles; she simply chose to credit the vocational expert's testimony regarding a matter on which the Dictionary was silent. The court will affirm the commissioner's decision.

---

[1] The court has updated the caption to reflect Martin O'Malley's confirmation as commissioner. *See* Fed. R. Civ. P. 25(d).

BACKGROUND

Biafora applied for disability insurance benefits alleging disability beginning October 2019. R. 259.[2] After his claim was denied initially and on reconsideration, Biafora requested a hearing before an ALJ, which was held by telephone on September 30, 2021, before ALJ Ahavaha Pyrtel. Biafora was represented by counsel at the hearing. Vocational expert Mary Andrews also testified.

In a December 2021 decision, the ALJ found that Biafora was not disabled. R. 13–27. The ALJ found that Biafora suffered from three severe impairments: degenerative disc disease of the cervical spine, major depressive disorder, and a somatic symptom disorder. In the four areas of mental functioning, the ALJ found moderate limitations in interacting with others, concentrating, persisting, and maintaining pace, and adapting and managing oneself. R. 17–18. The ALJ found that Biafora's impairments did not meet the requirements of any listed disability.

The ALJ determined that Biafora had the residual functional capacity (RFC) to perform light work with additional limitations to address the effects of his disc disease and mental limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). More specifically, the claimant can lift and carry twenty pounds occasionally and ten pounds frequently. He can sit, stand, or walk six hours in an eight-hour workday. He can push and/or pull as much as he can lift and/or carry. He can no more than occasionally reach overhead to the left and no more than occasionally reach overhead to the right. He can no more than frequently handle or finger with the right hand. He can no more than occasionally climb ramps and stairs. He can never

---

[2] Record cites are to the administrative transcript located at Dkt. 8.

> climb ladders, ropes, or scaffolds. He can no more than frequently balance. He can no more than occasionally stoop, kneel, crouch, or crawl. He can no more than occasionally work in vibration or with vibratory tools. He is able to perform simple, routine, and repetitive tasks. He can no more than occasionally interact with the public. He can perform neck flexion up to forty degrees. He can perform neck extension up to fifteen degrees. He can rotate his neck sixty degrees to the right and fifty-five degrees to the left.

R. 20.

At the hearing, the ALJ posed hypotheticals to the vocational expert reflecting the limitations that the ALJ ultimately adopted in the RFC. The expert identified housekeeping cleaner and marker as two jobs available for workers with Biafora's RFC, each of which had more than 100,000 positions available in the national economy. R. 63. The ALJ asked the expert whether she had deviated from the Dictionary of Occupational Titles in identifying these jobs. R. 65. The expert testified that the Dictionary did not include any information about reaching in just one direction, so she had used her training and experience to form her opinion that a person who could only occasionally reach overhead would be able to do these jobs. R. 65. Biafora's counsel questioned the expert about this opinion at the hearing, R. 67, and filed objections after the hearing, arguing that the expert's testimony directly conflicted with the Dictionary because the Dictionary listed both the housekeeping cleaner and marker jobs as requiring frequent reaching in all directions. R. 394–95. The ALJ denied Biafora's objections, finding that the Dictionary did not contain any guidance on the direction of reaching that would be required in these jobs and accepting the vocational expert's testimony that someone who could occasionally reach overhead could do these jobs. R. 25. The ALJ concluded that Biafora could perform a significant number of jobs available in the national economy. R. 25–26. The Appeals Council denied Biafora's request for review, so the ALJ's decision became the final decision of the commissioner. R. 1.

Biafora now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Biafora contends that the ALJ erred by failing to account for his mental limitations in the RFC, by failing to properly evaluate the opinion of the state agency's examining consulting psychologist, and by failing to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles about how much overhead reaching would be required in the jobs the expert identified for him.

**A.  ALJ's evaluation of Biafora's mental limitations**

At step three of the sequential evaluation process, the ALJ found that Biafora had moderate limitations in three broad areas of mental functioning: interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing himself. R. 17–18. Biafora contends that the ALJ did not explain how the RFC accounts for these limitations, specifically the limitations in concentrating, persisting, and maintaining pace and in adapting and managing himself.

An ALJ's RFC assessment must incorporate any impairments supported by the medical record, including mental functioning impairments. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th

4

Cir. 2014). But a step three finding that a claimant has a moderate limitation in one of the broad areas of mental functioning is a generalized assessment of the claimant's overall abilities, not a specific impairment that must be incorporated into the RFC. *Rabitoy v. Berryhill*, No. 17-cv-495-jdp, 2018 WL 1010219 (W.D. Wis. Feb. 21, 2018); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619–20 (7th Cir. 2010) (collecting cases that did and did not incorporate the claimant's specific impairments). Thus, the question is whether the RFC "adequately account[s] for the claimant's demonstrated psychological symptoms." *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). To be entitled to remand, the claimant must cite evidence that his specific limitations would prevent him from performing work under the terms of his RFC. *See id.*

In formulating Biafora's RFC, the ALJ determined that Biafora could perform simple, routine, and repetitive tasks in a work setting with no more than occasional interaction with the public. R. 20. Biafora doesn't identify any evidence that the ALJ did not address that supports more significant restrictions. The ALJ acknowledged Biafora's history of mental health symptoms, his subjective reports of depression and anxiety, and his consultative examination, in which the examining psychologist found that his formal judgment appeared limited and opined that he had a "poor prognosis." R. 22. But she determined that the record did not justify greater restrictions than those she included in the RFC, because Biafora had multiple normal mental status examinations, performed normally on simple recall and concentration tasks, self-reported that he followed instructions "great" and was "OK" at handling changes in routine, and was able to drive a car. R. 22.

Biafora identifies two pieces of medical evidence that purportedly justify additional mental functioning restrictions. First, during his consultative evaluation, Biafora appeared

5

frustrated when he could not remember dates, often paused for several moments when asked a question as though he were confused about what was being asked, and moved around in his seat as if he were in pain. R. 629. But the ALJ addressed Biafora's consultative evaluation in her opinion, determining that the negative exam findings justified some of the restrictions she placed in the RFC, but that they did not justify additional restrictions because they were inconsistent with numerous normal evaluations in the medical record. R. 22–23. Second, Biafora once visited the emergency department, where he appeared unkempt and was very aggressive in his demands for pain medication. R. 580. But Biafora does not explain why his appearing unkempt and aggressive in the emergency department on one occasion means that he is incapable of performing simple, routine work with no more than occasional interaction with the public.

Biafora also contends that the lack of additional restrictions is "unsupported by every medical opinion within the record." Dkt. 10, at 9. He notes that the state agency consultants, Dr. Mariano and Dr. Warren, found that he had moderate limitations in his ability to respond appropriately in a work setting. He argues that the following statements from the consultants, which the ALJ found largely persuasive, show that he needs additional RFC restrictions for his difficulties adapting to workplace changes and dealing with high-pressured work demands:

- Dr. Mariano: Biafora "does not have the ability to deal effectively with high-pressured work demands or frequent, unanticipated changes. He would do best in a job that does not require changing tasks daily, but rather has a fairly regular set of job duties and expectations." R. 89.

- Dr. Warren: Biafora would be "able to adapt to routine workplace change, remain aware of environmental hazards, form basic plans/goals, travel independently," indicating that his limitations were "essentially consistent with initial level mental severity assessment." R. 119, 125.

6

Biafora is incorrect that a medical consultant's finding moderate limitations in mental functioning automatically requires the ALJ to include additional RFC restrictions. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). A finding of moderate limitations simply means that a claimant's functioning in a certain area is "fair," not "bad" or "inadequate." *Id.* A medical consultant can reasonably find a moderate limitation in mental functioning and also find that a claimant is capable of simple, routine, work. *Id.*

Biafora fails to show that the narrative statements from the consultants require any additional RFC restrictions. The RFC already accounts for the consultants' opinions that Biafora has difficulty adapting to workplace changes. The ALJ restricted Biafora to routine work, in other words, work that requires few workplace changes. The ALJ is not required to use the exact wording that the medical opinions used in setting the RFC. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("[t]he law does not require ALJs to use certain words").

As for dealing with high-pressured work demands, that is an issue of how the ALJ weighed the medical opinions. An ALJ's weighing of medical evidence is entitled to substantial deference as long as the ALJ adequately explains her reasoning in light of the medical opinions' supportability and consistency with the medical record. *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022); *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). In this case, the ALJ explained that she found Dr. Mariano's opinion that Biafora should be limited to low stress work unpersuasive because that opinion was inconsistent with the overall record of unremarkable mental status findings and Biafora's self-report that he was "OK" handling changes in routine. R. 23. And Dr. Warren's assessment did not include this limitation. R. 125. The ALJ's weighing of Dr. Mariano's opinion is not a reason to remand.

## B. Examining consulting psychologist opinion

In evaluating medical opinions, the ALJ must consider how well supported the opinion is and how consistent it is with the evidence in the record. 20 C.F.R. § 416.920c(a); *Albert*, 34 F.4th at 614 (7th Cir. 2022). The ALJ must consider all relevant medical evidence and not cherry pick only the evidence supporting her conclusion. *Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023).

Biafora contends that the ALJ erred by giving little weight to the opinion of consulting examining psychologist Dr. Peggy Dennison. Dr. Dennison found Biafora severely limited in his ability to withstand routine work stresses due to his physical limitations, chronic fatigue, pain, depression, and anxiety. R. 631. But the ALJ found this opinion unpersuasive for three reasons: it was based largely on Biafora's subjective report of his symptoms; it was inconsistent with the medical record as a whole; and it was unsupported by several of Dr. Dennison's own findings. Biafora contends that in making these findings, the ALJ improperly cherry picked the evidence supporting her determination, ignoring evidence from Dr. Dennison's exam and from the medical record as a whole that supported Dr. Dennison's conclusion.

Biafora mischaracterizes the ALJ's opinion. The ALJ acknowledged that Dr. Dennison made some observations indicative of abnormal mental status. R. 18 ("On examination, his judgment appeared limited."); R. 22 ("*Outside* his consultative evaluation for the state agency [Dr. Dennison's evaluation], mental status findings are repeatedly unremarkable." (emphasis added)). The ALJ also appeared to credit some of Dr. Dennison's observations, for example, citing her observation that Biafora had limited judgment in support of the ALJ's finding a moderate limitation in Biafora's ability to adapt and manage himself. R. 18. But the ALJ found unpersuasive Dr. Dennison's conclusion that Biafora had *severe* limitations, noting that other

findings from Dr. Dennison's exam, including Biafora's generally normal behavior, his ability to establish a rapport with Dr. Dennison, and his ability to maintain concentration on simple sequential tasks, undercut the severity of his limitations. The ALJ's reasoning is enough to meet the substantial evidence standard.

## C. Vocational expert testimony

Social Security Administration guidance instructs ALJs to ask vocational experts whether the testimony they have provided conflicts with the Dictionary of Occupational Titles. *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4p (S.S.A. Dec. 4, 2000). If the expert's testimony conflicts with the Dictionary, then the ALJ must "obtain a reasonable explanation for the apparent conflict" from the expert and must explain in her opinion how the ALJ resolved the conflict. *Id.*; *see also Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). If the Dictionary is silent on a particular issue, that is a reasonable explanation for accepting an expert's testimony. In that situation, an expert may rely on her professional experience, education, and knowledge to provide details beyond what is available in the Dictionary. *See Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *2 (7th Cir. July 22, 2021) (citing *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)).

The ALJ in this case followed the Social Security guidance. The vocational expert testified at the hearing that a hypothetical individual with Biafora's RFC restrictions could perform the jobs of housekeeping cleaner and marker. R. 63. The Dictionary lists these jobs as requiring frequent reaching but does not specify in what directions an individual would have to reach. "Cleaner, Housekeeping," U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 672783; "Marker" U.S. Dep't of Labor, *Dictionary of Occupational Titles*

9

(4th ed. 1991), 1991 WL 671802. The ALJ asked the expert if her testimony deviated at all from the Dictionary. R. 65. The expert explained that the Dictionary was silent on reaching in one direction, so she used her training and experience to determine whether someone who could only occasionally reach overhead, but could reach in other directions without limitation, could perform these jobs. R. 65. She repeated this testimony under questioning from Biafora's counsel. R. 66. The ALJ then explained in her final decision that the Dictionary does not differentiate regarding the direction of reaching and so she relied on the expert's testimony in determining that Biafora could perform these jobs. R. 25.

Biafora contends that the ALJ did not meet her obligation under the Social Security guidance for two reasons. First, he argues that there *was* a conflict between the expert testimony and the Dictionary. According to Biafora, the vocational expert said that the Dictionary classifies these jobs as requiring frequent reaching in all directions, R. 66, so her testimony that a person limited to only occasional overhead reaching could do these jobs was a direct conflict. But Biafora's argument misstates the Dictionary and takes the expert's testimony out of context. The Dictionary listing for both jobs is "Reaching: Frequently - Exists from 1/3 to 2/3 of the time." "Cleaner, Housekeeping," U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 672783; "Marker" U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991), 1991 WL 671802. And the full testimony from the vocational expert that Biafora points to is:

> That issue is not in the DOT as I said. The reaching in one direction is not differentiated in the DOT. The DOT classifies reaching in all directions, so it's all directions included at a frequent level, so, in my opinion reaching overhead on an occasional basis, that occupation would remain viable at that—the only items we're looking at.

10

R. 66. The Dictionary does not say that these jobs require frequent reaching *in all directions*, and the expert did not testify to that. Rather, as the ALJ explained, the Dictionary is silent on what directions a person would have to reach. Because the Dictionary is silent, the ALJ appropriately relied on the expert's testimony in determining that Biafora could do these jobs.

Second, Biafora argues that the ALJ cannot simply cite a vocational expert's training and experience when she decides to rely on the expert's testimony. He relies on *Prochaska v. Barnhart* for the contention that the ALJ has to actually solicit reasons from the expert as to why a person doing these jobs would not have to frequently reach overhead. 454 F.3d 731, 736 (7th Cir. 2006). But *Prochaska* holds only that the ALJ must make some inquiry of the expert as to whether the expert's testimony differs from the Dictionary, and why. *Id.* Biafora's argument is also inconsistent with the Social Security guidance, which states that an ALJ may rely on a vocational expert's "experience in job placement or career counseling" when the Dictionary is silent on a certain issue, SSR 00-4p (S.S.A. Dec. 4, 2000). And it is inconsistent with several court of appeals and district court decisions that have affirmed ALJ decisions citing a vocational expert's training and experience. *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194 (7th Cir. July 22, 2021) (expert relied on her "experience, education, and knowledge"); *Andrew C. v O'Malley*, No. 1:23-CV-148, 2024 WL 687432 (N.D. Ind. Feb. 20, 2024) (expert relied on his "education, training, and experience"); *Bradley v. Colvin*, No. 15 C 8107, 2016 WL 5928811 (N.D. Ill. Oct. 11, 2016) (expert relied on her "professional experience in job placement and job site observation"). The court agrees that a generic reference to "training and experience" is not adequate to justify every assertion that a vocational expert might make. But Biafora's counsel had the opportunity to question the vocational expert about the details of her training and experience at the hearing. R. 66–67. Under these circumstances,

11

the vocational expert's generic explanation that her testimony was based on her training and experience provided sufficient evidence to support the ALJ's decision.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered March 28, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge